2020 IL App (2d) 190244-U
No. 2-19-0244
Order filed February 26, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| SCOTT PETERS, | ) | Appeal from the Circuit Court |
| | ) | of McHenry County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 18-CH-54 |
| | ) | |
| KATHERINE M. KEEFE, MARK COOK, | ) | |
| COUNTY OF MCHENRY, CLINTON | ) | |
| GABBARD, ROBERT KEANALLY, | ) | |
| MCHENRY COUNTY CLERK, MCHENRY | ) | |
| COUNTY PUBLIC DEFENDER, MCHENRY | ) | |
| COUNTY SHERIFFS, MCHENRY COUNTY | ) | |
| STATES ATTORNEY, KEITH NYGREN, | ) | |
| and BILL PRIM, | ) | Honorable |
| | ) | Kevin G. Costello, |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Jorgensen and Burke concurred in the judgment.

**ORDER**

¶ 1   *Held*: Trial court correctly dismissed all claims in the plaintiff's second amended complaint.

¶ 2   The plaintiff, Scott Peters, was convicted of several counts of attempted murder and is currently serving a lengthy sentence. He sent requests pursuant to the Freedom of Information Act (FOIA or Act) (5 ILCS 140/1 *et seq*. (West 2014)) to the defendants. His requests were largely

denied on the basis that the information sought fell within one or more exemptions contained in the Act. Peters then filed this action, contending that the defendants had violated the Act and his constitutional rights. After granting him leave to replead more than once, the trial court dismissed his second amended complaint with prejudice. He appeals the dismissal, which we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     In October 2014, three McHenry County deputy sheriffs came to Peters' house to perform a welfare check on his wife. He refused to allow them to speak with her and fired multiple shots at them, striking two of them: Deputy Dwight Maness and Deputy Khalifa Satkiewicz. In his statement to police, Peters said that he did not know the deputies were law enforcement officers. At trial, the deputies testified that they identified themselves as sheriffs at the outset, before Peters began shooting. He was eventually charged with six counts of attempted murder, two counts of aggravated battery, and five counts of aggravated discharge of a firearm.[1]

¶ 5     Shortly after Peters' arrest, search warrants were issued for his home and yard. The police also later obtained search warrants to conduct forensic searches of electronic storage media (computers, memory chips, and the like) found on the premises. Each of these warrants was classified as a "Miscellaneous Remedy" matter in the circuit court's docketing system and given its own case number. Orders from at least two of these cases (14-MR-590 and 14-MR-606) are now part of the public record; each order states, among other things, "This file shall remain impounded until further order." A search warrant inventory from 14-MR-590 that is in the public record states that among the items seized from Peters' house were a home surveillance system,

_____

[1] A few months after Peters' conviction, Deputy Maness died of his injuries. Peters has not been charged with additional crimes based on Maness' death.

video/audio cameras, and a wireless receiver that contained a memory chip. At trial, Detective Caitlyn Kelly testified that the monitor for the surveillance system was not turned on when she first viewed it nine hours after the incident, and she did not recover any video or audio recording from the system.

¶ 6 In February 2015, protective orders were entered as part of pretrial discovery, allowing the release of the personal health information (PHI) of the two injured deputy sheriffs for use in "any manner *** reasonably connected with" the criminal case against Peters. The order stated that the deputies' PHI could be disclosed to "the parties, their attorneys of record[], the attorneys' firms," and various others "involved in the litigation process." The order further provided that, once "all trial and appellate proceedings" had been completed, anyone still holding such PHI should destroy all copies of it.

¶ 7 In April 2015, a jury found Peters guilty of all charges and he was sentenced to 135 years in prison. Peters filed an appeal. Finding that he was indigent, the circuit court appointed the appellate defender as counsel for his appeal and ordered one of the defendants in this case, Katherine M. Keefe, the Clerk of the McHenry County circuit court, to prepare the record on appeal without charge. The record was provided to Peters' appointed counsel. The record did not contain any of the search warrants, although the docket listing did identify one of the search warrant cases, 14-MR-606, as a "companion" case.

¶ 8 In December 2015, Peters began filing requests for information under the Act. A FOIA request directed to the defendant, the McHenry County Public Defender, sought "copies of my trial file to include police reports, forensic reports, witness statements and pretrial motions, and any other documents that will be useful in fighting my case." A few months later, after an inquiry about the status of this request, Public Defender Mark Cook sent the Attorney General a letter

indicating that his office had not received Peters' December 2015 FOIA request, but even if it had, it would not have produced any documents for two reasons. First, as a part of the judicial branch, the Public Defender was exempt from FOIA. Second, Illinois Supreme Court Rule 415(c) (Ill. S. Ct. R. 415(c) (eff. Oct. 1, 1971)) provides that materials furnished to an attorney pursuant to the rules of discovery in criminal proceedings "shall remain in [the attorney's] exclusive custody and be used only for the purposes of conducting [their] side of the case." From June 2015 through March 2018, the appellate defender was representing Peters in appealing his criminal convictions.

¶ 9    Despite the fact that he was represented by counsel, in February 2016, Peters sent a FOIA request to the Clerk, asking for "any and all missing documents not included in my record of appeal," including "the entire search warrant inventories" and "copies of the warrants," as well as any forensic reports filed with the court. Peters attached a copy of a police report he had obtained that mentioned certain search warrant cases and forensic reports. The Clerk responded by noting that, although the Clerk and the courts did not fall within the ambit of FOIA, most of the information filed with the Clerk was open to the public. However, search warrants were "automatically impounded by statute while the case is ongoing," and that was true of the search warrant cases identified in the police report, which were impounded "until further order of court." The Clerk advised Peters that he could file a motion asking that the files be opened. Without such an order, however, the Clerk could not provide copies of the files.

¶ 10    Peters did file motions seeking to have the impoundment orders lifted. The trial court denied the motions. Peters appealed the denial, but the appeal was dismissed. However, in July 2016 while the appeal of his criminal convictions was pending, the clerk of the appellate court wrote Peters to say that our court had authorized the release of an inventory listing the items seized during the execution of an October 16, 2014, search warrant. Further, in March 2017, we entered

an order allowing the record on appeal to be supplemented with impounded documents related to the search warrants sought on October 16 and 22, 2014, and we allowed appellate counsel for all parties to review those documents.

¶ 11    In July 2016, Peters sent two FOIA requests to the defendant, the McHenry County State's Attorney.  The first was a duplicate of his February 2016 request to the Clerk, seeking documents connected with the search warrants and forensic reports.  The State's Attorney denied the request based on the exemption contained in section 7(1)(a) of the Act (information "specifically prohibited from disclosure by federal or State law or rules," 5 ILCS 140/7(1)(a) (West 2014)), because the requested information was either (1) impounded by court order or (2) discovery that was required to remain in the State's Attorney's "exclusive custody" pursuant to Rule 415(c).

¶ 12    The second FOIA request asked for "all materials and documents related to my case" and, more specifically, all notes and statements of anyone who participated in the October 2014 incident or who investigated the incident, "that should have been disclosed to me under S. Ct. Rule 412 ***and was not, and further exculpatory evidence under 725 ILCS 5/114.13."  The State's Attorney first responded that it was denying his request because the information sought was discovery that was exempt from disclosure under Rule 415(c) and section 7(1)(a) of the Act.  Two days later, however, the State's Attorney sent a second response.  It stated that, while the specific documents mentioned in the request were discovery that the State's Attorney still considered exempt, it had realized that Peters also sought "all materials and documents related to my case."  That broad request would include non-discovery documents that were public documents.  However, such documents were voluminous and would require a burdensome search through "at least a thousand pages of documents and multiple disks" to determine what was subject to disclosure under FOIA. Because of the burden on the office, it would impose a statutory fee of $0.15 per page for every

page after the first 50 pages. The estimated fee would be $52.50, and it would have to be paid in advance. The record does not indicate that Peters paid the fee.

¶ 13    In December 2017, Peters sent a FOIA request to another defendant, the Sheriff of McHenry County, seeking copies of "the emergency medical reports" about the two deputies he had shot, as well as reports from the McHenry Township fire department (presumably, seeking similar emergency medical reports). The Sheriff denied the FOIA request, citing exemptions contained in sections 7(1)(b) and 7(1)(e-9) of the Act (5 ILCS 140/7(1)(b), (e-9) (West 2016)) that protect (1) "private information" including medical records, and (2) records containing the personal information of crime victims, where the person requesting the records was charged with or convicted of a crime to the victim.

¶ 14    In March 2018, we affirmed Peters' convictions. *People v. Peters*, 2018 IL App (2d) 150650. Peters sought review by the Illinois and United States supreme courts, both of which denied his petitions for review.

¶ 15    Peters, acting *pro se*, filed the lawsuit now at issue in this appeal in January 2018. The named defendants included several entities: the Clerk of the McHenry County circuit court, the McHenry County State's Attorney, the McHenry County Public Defender, the McHenry County Sheriff, and McHenry County itself. The defendants also included various persons within those offices, including Keefe (the Clerk), Robert Keanally (identified as the State's Attorney), Cook (Public Defender), Keith Nygren and Bill Prim (sheriffs), and Clinton Gabbard (president of the County board). The complaint attempted to allege claims under FOIA and that Peters' constitutional rights were violated by the defendants' acts and omissions. It sought injunctive and declaratory relief.

¶ 16    The Clerk (who is represented by the Attorney General) and the remaining defendants (who are all represented by the McHenry County State's Attorney and are collectively referred to as the County Defendants) filed motions to dismiss the complaint. The trial court granted Peters leave to amend the complaint and the defendants withdrew their motions.

¶ 17    After Peters filed an amended complaint, the defendants again moved to dismiss the claims against them. The motions were fully briefed and oral arguments were presented on September 20, 2018. Peters participated in the hearing by telephone.

¶ 18    At the close of the hearing, the trial court ruled. It dismissed certain of the claims with prejudice, including the FOIA claims against the Clerk and the Public Defender (on the basis that they were part of the judicial branch and hence not subject to FOIA), and that part of the FOIA claim against the State's Attorney that was based on Peters' request for documents subject to Rule 415(c). Peters was granted leave to replead his FOIA claim against the State's Attorney based on the imposition of the $52.50 fee. As to that claim, the trial court advised Peters that he needed to include allegations about whether he tendered payment or, if he did not, why he was not required to pay the fee. Peters was also granted leave to replead his constitutional claims, which were dismissed without prejudice on the basis that he had failed to adequately specify the documents that had been withheld from him and how that withholding had violated his constitutional rights. The trial court initially reserved ruling on the FOIA claim against the Sheriff. However, a few days later, the trial court issued a memorandum opinion and order dismissing that claim with prejudice. The trial court found that, although the February 2015 protective orders permitted Peters and his attorneys to view and use the PHI of the deputies he had shot, that permission was limited to the trial and appellate proceedings in the criminal case, and any remedy must be sought in that case.

¶ 19    Peters filed a second amended complaint that restated his claims, including those previously dismissed with prejudice.  The handwritten complaint was 32 pages long.  The defendants again moved to dismiss.  On March 7, 2019, after briefing and oral argument (in which Peters again participated by telephone), the trial court granted the motions and dismissed the complaint with prejudice "for the reasons stated on the record."  No transcript of this hearing is included in the record.

¶ 20                          II. ANALYSIS

¶ 21    On appeal, Peters raises a variety of arguments about the trial court's dismissal of his complaint.  However, we must first address the quality of the argument Peters has put before us.

¶ 22    The County Defendants have moved to strike Peters' opening brief and dismiss the appeal on the ground that it violates the requirements set out in Illinois Supreme Court Rule 341 (Ill. S. Ct. R. 341 (eff. May 25, 2018)).  We agree that the brief is difficult to follow and deficient in multiple ways.  To begin with, section (h)(6) of the rule requires that an appellant's brief contain a statement of the facts necessary to an understanding of the case, stated fairly and without argument or comment, with appropriate citations to the record on appeal.  Peters has included substantial amounts of argument throughout his rambling statement of the facts, and fails to include any citations at all to the portions of the record in this case that would support his characterization of the facts relevant to this appeal.  Instead, Peters devotes most of the statement of facts to reciting his version of the events of his 2015 criminal trial and cites only to the record of that case.  Ill. S. Ct. R. 341(h)(6) (eff. May 25, 2018).  The argument portion of Peters' brief also violates section (h)(7) of the rule, as it does not explain why the trial court's rulings were incorrect; instead, he simply maintains (without any reasoning or explanation) that he adequately stated a claim as to each defendant.  Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).  In violation of section (h)(9), Peters

did not include an appendix that includes the notice of appeal, the order(s) appealed from, and a table of contents to the record. Ill. S. Ct. R. 341(h)(9) (eff. May 25, 2018). Finally, Peters also filed a document titled "memorandum of law" that is not permitted by the supreme court rules. The rules instead provide that any argument or explanation necessary to an understanding of the appeal must be included in the appellant's brief. Ill. S. Ct. R. 341(h)(7) (eff. May 25, 2018).

¶ 23 "The rules of procedure concerning appellate briefs are rules and not mere suggestions." *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). Adherence to the rules is essential so that our court can perform its function of informed review, and the failure to comply with those rules is a serious matter. *Burmac Metal Finishing Co. v. West Bend Mutual Insurance Co.*, 356 Ill. App. 3d 471, 478 (2005).

¶ 24 Nor does Peters' *pro se* status relieve him of the obligation to follow the supreme court rules for appellate briefing. *Lewis v. Heartland Food Corp.*, 2014 IL App (1st) 123303, ¶ 5; see also *McCutcheon v. Chicago Principals Ass'n*, 159 Ill. App. 3d 955, 960 (1987) ("a party's decision to appear *pro se* does not relieve that party from adhering *** to the requirements of the rules of practice enunciated by our supreme court"). As a reviewing court, we are entitled to have the issues clearly defined, pertinent authority cited, and cohesive legal arguments presented. *Lewis*, 2014 IL App (1st) 123303, ¶ 5. Contentions that are not adequately presented on appeal, because the appellant has failed to provide coherent argument or cite pertinent authority, do not merit consideration. *Holmstrom v. Kunis*, 221 Ill. App. 3d 317, 325 (1991).

¶ 25 A brief that lacks any substantial conformity to the rules may justifiably be stricken. *Tannenbaum v. Lincoln National Bank*, 143 Ill. App. 3d 572, 574 (1986). Nevertheless, to the extent that we can discern Peters' arguments and the factual and legal bases for those arguments,

we consider them below. We strike only his "memorandum of law," which is not permitted by the rules. The remainder of the relief requested in the County Defendants' motion is denied.

¶ 26                     A. Arguments Applicable to All Defendants

¶ 27    Peters argues that the trial court erred in dismissing his complaint because all of the defendants judicially admitted his allegations by failing to file answers within the required time. Peters is correct that section 2-610 of the Code of Civil Procedure (Code) (735 ILCS 5/2-610 (West 2018)) states that, unless "explicitly denied" in a timely filed answer, the allegations of a complaint are deemed admitted. However, parties may file a motion seeking to dismiss a complaint prior to filing an answer. If they do so, no answer to the complaint is required until the motion has been resolved. Ill. S. Ct. R. 181(a) (eff. Jan. 4, 2013). Here, in response to Peters' second amended complaint, all of the defendants filed motions to dismiss that complaint. The trial court eventually granted those motions and dismissed the complaint in its entirety, leaving no allegations which the defendants were required to answer. We therefore reject this argument.

¶ 28                              B. Standard of Review

¶ 29    Before considering whether the second amended complaint was properly dismissed by the trial court, we set out the parameters of our review. The motions granted by the trial court were brought under sections 2-615 and 2-619 of the Code. A motion to dismiss brought under section 2-615 of the Code attacks the sufficiency of the complaint, on the basis that, even assuming the allegations of the complaint to be true, the complaint does not state a cause of action that would entitle the plaintiff to relief. 735 ILCS 5/2-615 (West 2016); *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. A section 2-619 motion to dismiss likewise assumes the allegations of the complaint are true, but asserts an affirmative defense or other matter which would defeat the plaintiff's claim. 735 ILCS 5/2-619 (West 2016); *Nielsen-Massey Vanillas, Inc., v. City of Waukegan*, 276 Ill. App.

3d 146, 151 (1995). Under either section, the court is to interpret the allegations of the complaint in the light most favorable to the plaintiff. *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 86-87 (1996). We review the dismissal of a complaint pursuant to either section *de novo*. *Wallace v. Smyth*, 203 Ill. 2d 441, 447 (2002).

¶ 30                                    C. Claims Against the Clerk

¶ 31    We turn to the question of whether Peters' complaint adequately pled any claims against the Clerk. Any FOIA claim against the Clerk is easily disposed of on the basis that the Clerk's office is part of the judicial branch in Illinois, and as such it is not subject to FOIA. See *Nelson v. Kendall County*, 2014 IL 116303, ¶ 29 (noting that, "because the FOIA does not include the judicial branch in its listing of public bodies, the judiciary is exempt from the statute's provisions," and this exemption extends to "nonjudicial components of the judicial branch" such as the clerks of the circuit courts); see also *Newman, Raiz & Shelmadine, LLC v. Brown*, 394 Ill. App. 3d 602, 606 (2009) (clerk of circuit court not subject to FOIA).

¶ 32    Nor does the complaint state a constitutional claim against the Clerk. Peters alleges that the Clerk prepared the record for his criminal appeal without including required documents. Per Illinois Supreme Court Rule 608(a)(6), the record prepared by the Clerk should include "all arrest warrants, search warrants, consent to search forms, eavesdropping orders, and any similar documents." Ill. S. Ct. R. 608(a)(6) (eff. Dec. 11, 2014). Peters notes that the record did not contain the search warrant files, and only referred to one of those files. He acknowledges that the search warrant files were impounded at the time the Clerk prepared the record, and he does not argue on appeal that he had the right to view impounded material. Peters contends, however, that the Clerk should have listed the impounded search warrant files. By not doing so, he contends that the Clerk not only violated Rule 608 (and the trial court's order to prepare the record for his

criminal appeal pursuant to Rule 608), she perjured herself when she certified that the record was complete. Peters alleges that the Clerk took these actions to obstruct his "ability to prove his actual innocence and to form a defense of fact and evidence," and that this violated his constitutional rights.

¶ 33    The right of due process includes the right to obtain exculpatory or impeachment evidence that is material to criminal charges against a defendant. *Kyle v. Whitley*, 514 U.S. 419, 433 (1995). Evidence is "material" if " 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *Id*. (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

¶ 34    Peters' complaint does not make out a claim for violation of his due process rights because it does not indicate how the search warrant files would be relevant to any defense he wished to raise, let alone how they would demonstrate his actual innocence of the charges against him. The sole item of evidence referred to in the complaint is a "surveillance video" that Peters contends is being wrongfully withheld. However, he does not allege that the Clerk has such a video in her possession. And the complaint does not allege that his appellate counsel was unaware of, or was denied access to, the search warrant files. Thus, he has not alleged any facts supporting his claim that his defense was prejudiced by any acts or omissions of the Clerk. As Peters did not state factual allegations sufficient to state a claim for the denial of his constitutional rights, the trial court did not err in dismissing his claims against the Clerk.

¶ 35    Peters argues broadly that he has the right to access public documents such as court files. Such access is protected under the federal constitution, section 16(6) of the Clerks of Courts Act (705 ILCS 105/16(6) (West 2016)), and common law. See *In re Gee*, 2010 IL App (4th) 100275, ¶¶ 21-24. This right of access is not unlimited, however, and the impoundment of search warrant

files does not violate any of these protections. See *id*. ¶ 36. More importantly, the Clerk does not control whether files are impounded—it is judges who make that decision. Peters knows this: he has asked judges to lift the impoundment orders more than once. This lawsuit against the Clerk does nothing to advance that goal or provide the access he seeks.

¶ 36    Finally, in a separate portion of his brief, Peters argues that he was denied records that he needed to prosecute his appeal because he was unable to pay a fee. It is not clear what he is referring to—his complaint does not indicate how the Clerk is alleged to have conditioned the release to him of any documents on receipt of a fee. As noted, the appellate defender was provided with the record in the criminal case free of charge. The Clerk concedes that in June 2017 her office returned certain documents Peters wished to file, because they were not accompanied by a filing fee. The complaint alleges only that these were "appeal documents," without any other description of the documents or their significance. Further, the complaint alleges that a year earlier, in June 2016, the Clerk's office requested a fee to prepare the record in Peters' appeal from the denial of his motions to lift the impoundment orders, and Peters responded with a letter stating that he was indigent and requesting that the record be prepared without cost. But the complaint does not allege what happened after that, and in his brief Peters does not refer to these allegations in any recognizable way. Accordingly, we find any argument regarding fees requested by the Clerk to be forfeited. Ill. S. Ct. R. 341(h)(7) (where a party does not offer any argument or meaningful authority in support of that argument, the argument is forfeited); *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises, Inc.*, 2013 IL 115106, ¶ 56 (same).

¶ 37                                  D. FOIA Claim Against the Sheriff

¶ 38    As we described earlier, Peters filed a FOIA request with the Sheriff that sought emergency medical reports for the two deputies he had shot. The Sheriff's office denied the request, citing

two applicable FOIA exemptions:  section 7(1)(b), which shields "private information" including medical records, and section 7(1)(e-9), which exempts records containing the personal information of crime victims where the requestor is the person who committed the crime.  Before the trial court, Peters argued that these exemptions were outweighed by the February 2015 protective orders, which permitted the "parties" to Peters' criminal case (which included Peters) to use the two deputies' PHI in "any manner *** reasonably connected with" the case.  The trial court rejected this argument, finding that the protective orders related only to the criminal case and did not require the release of the deputies' PHI in response to a civil FOIA request.

¶ 39    On appeal, Peters contends that the trial court erred in reaching this conclusion about the scope of the protective orders because the PHI he sought was evidence in the criminal case.  While that is of course true, that does not mean that the PHI may be released beyond the bounds of the criminal case, that is, in response to a civil FOIA request.  Peters also argues that he, as well as his attorney, was permitted to use the PHI, but this is a straw man: the trial court's decision was based on the fact that Peters was seeking the PHI outside of the criminal case, not on the fact that it was Peters (as opposed to his attorney) who filed the request.  Peters argues that the phrase "reasonably connected with this litigation" (that is, the criminal case) should be read to encompass his FOIA request, because he was the FOIA requestor and he was also the defendant in the criminal case.  However, we agree with the trial court that Peters' FOIA request was not part of the criminal case proceedings.  We further note that the protective orders plainly state that anyone holding the PHI covered by the orders should destroy it once the trial and appellate proceedings in the criminal case were complete.  Those proceedings were complete no later than June 2019, when the United States Supreme Court denied Peters' petition for a writ of *certiorari*.

¶ 40    Peters also argues that the FOIA exemption for private information should not apply to the medical records of Deputy Maness because he is deceased and the government can have no interest in protecting the privacy of a deceased individual.  In support, he cites *McDonnell v. United States*, 4 F.3d 1227 (3d Cir. 1992), in which a federal court reversed the denial of a FOIA request for the medical records of a person involved in a ship fire almost 60 years earlier.  Instead, the court ruled, the government should determine whether the person was still living, because a living person would have a much greater interest in the privacy of their medical records than someone who had died many years ago.  *Id*. at 1254.  (However, even if the person were dead, the government would still be permitted to identify a privacy interest that could outweigh the "minimal" public interest in disclosure that existed in that case.  *Id*.)

¶ 41    *McDonnell* is inapposite, because it involved a different statute—the *federal* FOIA—which has very different language, prohibiting the disclosure of medical files only when disclosure "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(B)(6) (1976).  The applicable provision of the Illinois FOIA, by contrast, exempts all "private information," which is defined to include medical records.  5 ILCS 140/2(c-5) (West 2016).  Such information is categorically exempt from disclosure.  *Id.* § 140/7(1)(b).  Thus, under the Illinois FOIA there is no need for a court to engage in the balancing of interests required under the federal FOIA.  The *McDonnell* court's comments about the relative privacy interests of living and deceased persons simply have no application to claims brought under the Illinois FOIA.

¶ 42    Under the plain language of the Illinois FOIA, medical records are "private information" that is categorically exempt from disclosure, and the statute contains no "exception to the exception" for the medical records of deceased persons.  Accordingly, we reject Peters' arguments that he should be able to obtain the medical records of Deputy Maness.  We also note that Peters

offers no response to the Sheriff's arguments that the medical records of both officers were additionally exempt from disclosure under a separate section of the Act, as "[r]ecords requested by a person in a county jail or committed to the Department of Corrections containing personal information pertaining to the person's victim or the victim's family." 5 ILCS 140/7(1)(e-9) (West 2016). That exemption is limited and does not apply to the extent that the information is "relevant to requester's current or potential case or claim," but Peters' brief does not argue that this exception applies here. For all of these reasons, we affirm the trial court's dismissal of Peters' FOIA claim against the Sheriff.

¶ 43                     E. FOIA-Related Claims Against the State's Attorney

¶ 44    None of Peters' arguments on appeal are specifically directed toward his FOIA claim against the State's Attorney. However, in one portion of his brief, Peters argues that his constitutional rights were violated when "the State" (this appears to be a reference to the State's Attorney) "asked for money" for providing responsive documents under FOIA (this appears to refer to the imposition of the $52.50 fee). In the complaint, Peters alleges that he was found indigent and permitted to proceed *in forma pauperis* in several court proceedings. However, he does not allege that he was unable to pay the $52.50 fee. Further, he has not provided this court with any legal authority for the proposition that an indigent person may have FOIA fees waived. (Although Peters cites case law holding that an indigent defendant is entitled to legal representation in order to mount a defense to criminal charges, that law is not applicable to civil matters such as a FOIA request.) Finally, Peters has not stated how the documents for which the State's Attorney proposed to charge a copying fee would be relevant to any "defense" he wished to raise, and thus he has not identified any actual prejudice flowing from the imposition of the fee. This court is not a repository into which an appellant may dump the burden of argument and research, and "an

appellant's failure to properly present his own arguments can amount to waiver of those claims on appeal." *People v. Chatman*, 357 Ill. App. 3d 695, 703 (2005). Accordingly, we reject any argument that the State's Attorney violated either Peters' constitutional rights or FOIA by assessing the $52.50 fee.

¶ 45                     F. FOIA Claim Against the Public Defender

¶ 46    The trial court dismissed the FOIA claim against the Public Defender with prejudice on the ground that, as part of the judicial branch of government, the Public Defender was not subject to the requirements of FOIA. See *Nelson*, 2014 IL 116303, ¶ 29; *Newman, Raiz & Shelmadine*, 394 Ill. App. 3d at 606. Peters' appeal does not contest this holding.

¶ 47    G. Constitutional Claims Against the Sheriff, State's Attorney and Public Defender

¶ 48    In his complaint, Peters alleged that the Sheriff, State's Attorney and Public Defender violated his constitutional rights in various ways. He alleges that the Sheriff violated his right to "assert and create a defense" by withholding evidence—the medical records he requested under the Act. (Although the complaint also refers to "police reports" that were allegedly withheld, Peters' FOIA request did not ask for any police reports, and he cannot cure that omission by inserting allegations about police reports into his complaint.)

¶ 49    As we have noted, the right of due process includes the right to obtain exculpatory or impeachment evidence that is material to criminal charges against a defendant. *Kyle*, 514 U.S. at 433. Evidence is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682. Here, however, the medical records were not withheld from Peters' defense: to the contrary, it is clear from the February 2015 protective orders that Peters' defense counsel had access to the deputies' medical records before and during the criminal trial and appeal. As for

postconviction proceedings, Peters has not cited any legal authority holding that the denial of a FOIA request for materials that a convicted defendant believes may be relevant to postconviction relief amounts to a similar deprivation of due process. Even if such authority existed, however, the complaint does not allege how the medical reports Peters sought from the Sheriff would be relevant to any issue he wished to raise in a postconviction petition. Accordingly, Peters' constitutional claim against the Sheriff was properly dismissed for failure to state a claim.

¶ 50    Similarly, Peters alleges that the State's Attorney and the Public Defender violated his constitutional rights by withholding "exculpatory, inculpatory and impeachment evidence" that he needs to "form a defense in his post-conviction remedies." His constitutional claim against the State's Attorney is based on that entity's denial of most of his FOIA requests on the ground that they sought materials produced in discovery for the criminal trial, and Rule 415(c) barred the disclosure of such materials. As to the Public Defender, Peters alleges that, separately from his FOIA request, he asked for the materials in his criminal defense trial file to be shared with him "before, during, and after" the trial, but the Public Defender (which was representing him at the time) denied that request, citing Rule 415(c). The trial court dismissed the constitutional claims in Peters' amended complaint[2] under section 2-615 of the Code, finding that they failed to state a claim.

---

[2] We do not know the basis for the dismissal of the constitutional claims as re-pleaded in the second amended complaint, as the order refers only to "the reasons stated on the record," and the record does not contain any transcript of the hearing. However, it does not matter as our review is *de novo* and thus we must independently determine whether dismissal of these claims is proper.

¶ 51    Illinois Supreme Court Rule 415(c) strictly limits the persons who may view and use discovery obtained in criminal pretrial proceedings:

"Any materials furnished to an attorney pursuant to these rules shall remain in [their] exclusive custody and be used only for the purposes of conducting [their] side of the case, and shall be subject to such other terms and conditions as the court may provide." Ill. Sup. Ct. R. 415(c) (eff. Oct. 1, 1971).

The drafters' comments to the rule explain that, because allowing pretrial discovery materials to become publicly available would likely prejudice "the administration of criminal justice," section (c) "establishes a mandatory requirement in every case that the material which an attorney receives shall remain in his exclusive custody." *Id*., Committee Comments (adopted Oct. 1, 1971).  This rule applies equally to the State and the defense. *Id*.  Under the rule, an attorney is permitted to discuss discovery material with others as necessary but cannot "furnish them with copies." *Id*.  In the years since the rule's adoption this provision has occasionally been criticized (see *People v. Savage*, 361 Ill. App. 3d 750, 760-61 (2005), and *People v. Shores*, 2012 IL App (5th) 100196, ¶ 47), but the Illinois Supreme Court has not chosen to modify the rule.

¶ 52    Peters argues that the strictures of Rule 415(c) must yield to his constitutional rights, but this is not so.  "[A] defendant does not have a constitutional right, under either the due process clause or the sixth amendment confrontation clause, to make his own search of privileged records." *People v. Bean*, 137 Ill. 2d 65, 99 (1990) (explaining the holding of *Pennsylvania v. Ritchie*, 480 U.S. 39 (1987)); see also *Weatherford v. Bursey*, 429 U.S. 545, 559 (1997) ("There is no general constitutional right to discovery in a criminal case, and *Brady* [*v. Maryland*, 373 U.S. 83 (1963)] did not create one").

¶ 53    We note that, to the extent that Peters alleges that he unsuccessfully sought access to his criminal trial file from the Public Defender, our decision today is not necessarily the final word. If and when Peters files a postconviction petition, he can seek his trial file—redacted as appropriate—through a request for discovery or a formal request to the Public Defender for his file.  See *People v. Dixon*, 2019 IL App (1st) 160443, ¶¶ 1, 4, 28; *People v. Elkins*, 2019 IL App (1st) 161798, ¶ 34.  However, that occasion is not before us now and we express no opinion on whether or to what extent such a request would be successful.

¶ 54    The State's Attorney and Public Defender also argue that Peters' claims against them were barred by the applicable statute of limitations.  However, as we have found that Peters failed to state viable claims that these entities deprived him of his constitutional rights, we need not address their other arguments regarding these claims.

¶ 55                          H. Remaining Claims

¶ 56    The complaint also contains broad allegations that all of the defendants conspired to deprive Peters of his constitutional rights.  However, these allegations do not come close to the type of specific factual allegations needed to plead a claim of conspiracy.  See *Fritz v. Johnson*, 209 Ill. 2d 302, 317 (2004).  Accordingly, any such claim was properly dismissed.

¶ 57    Peters also attempted to state a claim against the County of McHenry under 42 U.S.C. § 1983.  Specifically, Peters alleged that the other defendants were acting as agents of the County and "violated [their] duty to disclose exculpatory evidence *** by creating an unconstitutional way of withholding evidence without reason."

¶ 58    A municipality such as the County can be held liable under section 1983 if its agents or employees violated the constitution pursuant to a municipal policy that was adopted either formally or informally.  See *Monell v. Department of Social Services*, 436 U.S. 658, 691-92 (1978); see also

*Jackson v. County of Kane*, 399 Ill. App. 3d 451, 455 (2010) ("to establish a section 1983 cause of action, the plaintiff must show that (1) a person acting under color of state law committed the conduct complained of and (2) such conduct deprived him of rights, privileges, or immunities secured by the constitution or the laws of the United States"). A section 1983 claim is properly dismissed where the conduct complained of does not violate the constitution. *Jackson*, 399 Ill. App. 3d at 455. In this case, Peters has not alleged any viable claim of an underlying constitutional violation. His claim against the County was properly dismissed for failure to state a claim. *Id*.

¶ 59                                III. CONCLUSION

¶ 60    The motion to strike the materials filed by Peters and to dismiss the appeal is granted in part and denied in part. The separate memorandum of law filed by Peters is stricken. All of the remaining relief requested in the motion is denied.

¶ 61    The judgment of the circuit court of McHenry County is affirmed.

¶ 62    Affirmed.